UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

Stanley Fort,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　Plaintiff,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　) No. 15 CV 50189
　　　　　　　　　　　　　　　　　) Magistrate Judge Iain D. Johnston
Carolyn W. Colvin, Acting　　　　　)
Commissioner of Social Security,　　)
　　　　　　　　　　　　　　　　　)
　　　Defendant.　　　　　　　　　)

## MEMORANDUM OPINION AND ORDER

Plaintiff Stanley Fort filed an application for disability benefits. He alleged he was disabled as of June 30, 2007.

During his hearing before an administrative law judge (ALJ), among other things, Fort testified under oath that he stopped working at Smokehouse Barbeque in June of 2007. He was adamant about this fact. Indeed, he was so adamant that he essentially accused an emergency room physician of creating a false medical record indicating that he worked at Smokehouse Barbeque. Fort also repeatedly testified that he did not prepare his own meals and that he did not cook.

After the hearing, the ALJ found Fort disabled, but only as of March 13, 2013. Fort appealed, claiming he was disabled on or before December 31, 2012.

On November 28, 2016, this Court denied Fort's appeal. In doing so, the Court noted that a local newspaper article dated April 18, 2013 indicated that Fort was working at Smokehouse Barbeque. Being mindful of basic principles of due process and Judge Hamilton's sage advice in *Rowe v. Gibson*, 798 F.3d 622, 636-44

1

(7th Cir. 2015), the Court gave Fort notice that it was aware of the newspaper article and gave Fort an opportunity to respond.[1]

Fort's attorney immediately notified him of this Court's order. Fort's attorney then provided him with "the opportunity to come forward with evidence to refute the implication that [he] committed perjury." Dkt. #22-1, p. 2. Fort failed to provide any "objective proof to refute the information in the [newspaper] article and no clear understanding of [his] involvement with the restaurant." *Id.*

At the hearing, despite being given notice, Fort failed to appear. Additionally, his attorneys rightfully and properly filed a "noisy withdrawal." *See* Local Rule 83.50 (adopting the American Bar Association Model Rules); Model Rule 1.6; Model Rule 3.3; Breslin and Dooley, *Whistle Blowing v. Confidentiality: Can Circumstances Mandate Attorneys to Expose Their Clients?*, 15 Geo. J. Legal Ethics 719 (2002) ("While the client retains an interest in effective advocacy, the attorney seeks to avoid entanglement in criminal behavior. Third parties and tribunals desire truth, while society is interested in a just legal system that ensures due process. Thus the lawyer's duty to make a 'noisy withdrawal,' or disaffirm prior representations made on behalf of the client that continue to perpetrate the client's wrongdoing, stands in contrast to the duty of confidentiality."). The Court granted Fort's attorneys' motion.

---

[1] The Court notes that even when a case is on appeal, parties can be given the opportunity to develop the record to address a void of facts so that the Court of Appeals is not making factual findings without the parties' input or the benefit of the adversarial process. Indeed, writing for the panel, Judge Hamilton remanded a matter for the limited purpose of developing a factual record. *See Ciarpaglini v. Norwood*, 817 F.3d 541, 546 (7th Cir. 2016). As the Court to which that matter was remanded, the Court believes that procedure worked well. The parties were given notice and opportunity to be heard, and the trial court was able to obtain evidence so as to make factual findings.

At the hearing, the Assistant United States Attorney appeared on behalf of the Social Security Administration (SSA), which asked the Assistant United States Attorney to notify the Court of several matters. And, being an excellent attorney, she did so. Specifically, the SSA first wanted the Court to know that at the application stage the administrative law judges have no investigative authority, and are prohibited from looking at Facebook. The Court recognizes that fact, but at this point, the clear conflict in Fort's sworn testimony and the newspaper article has been discovered and presented to the SSA. Second, the SSA wanted the Court to know that a review process exists that allows for a review of applicants' continued eligibility every few years. Again, the Court understands that process exists, but at this point, waiting a few years while payments are made would not be best practices. Third, the SSA wanted this Court to know that an applicant can work to some extent, but still be entitled to benefits. The Court understands that applicants cannot be engaged in *substantial*, gainful employment and that some work is allowed. *See* 20 C.F.R. 404.1572. But the Court pauses again to note that whether Fort was *substantially, gainfully employed* is not the issue here. Instead, the issue here is Fort's repeated and adamant testimony directly conflicting with a published newspaper article that Fort has not refuted despite the opportunity to do so. Finally, the SSA wanted the Court to know that the SSA has an Office of Inspector General (OIG) that reviews potentially fraudulent claims if it learns of those issues through a court opinion, and that this matter was referred to the SSA's OIG. Again, the Court is aware of the SSA's OIG. HALLEX I-1-3. Not surprisingly, certain

actions subject a person to criminal prosecution for fraud, including making a false statement or representation of a material fact (a) for use in determining rights to Social Security benefits, (b) as to whether wages were paid or received, and (c) as to whether net earnings for self-employment were received. HALLEX I-1-3-3.B. An OIG investigation can result in a criminal prosecution, civil action by the Department of Justice, imposition of a civil monetary penalty, or administrative sanctions or other actions by the SSA. HALLEX I-1-3-1-D.

This Court is not an investigative body. Investigations regarding alleged Social Security fraud are left to the executive branch, which determines what matters to investigate based upon, among other things, resources and merits. Moreover, the Court fully understands that the SSA and its ALJs have a difficult task: "On the one side, incorrect denials of benefits can leave deserving claimants, who are often in precarious financial conditions, without a crucial source of income. On the other, erroneous grants of benefits reward liars at public expense, waste resources that could be put to any number of more productive uses, and may ultimately reduce the level of funding available for people who are legitimately disabled." *Fair v. Bowen*, 885 F.2d 597, 602 (9th Cir. 1989). But this Court, like many others across the nation, is nearly overwhelmed in a deluge of Social Security appeals. And in reviewing Social Security appeals, this Court is not alone in wondering if the system works. *See Retlick v. Astrue*, 930 F. Supp. 2d 998, 1009 (E.D. Wisc. 2012) ("It is also a system in which it is difficult to have much

4

confidence in the result.").[2]  The Court's confidence in the system wanes even more when it *sua sponte* learns of possible fraud.  Nevertheless, this matter is now in jurisdiction of the SSA's OIG, and the Court must have faith that a full and proper investigation will be conducted.


Entered December 22, 2016                               By:_____
                                                                                    Iain D. Johnston
                                                                                    U.S. Magistrate Judge

---

[2] The Court recognizes that a wholesale review of the system has been undertaken and recommendations have been made to improve the system.  *See* A Study of Social Security Litigation in the Federal Courts (Administrative Conference of the United States, July 28, 2016).